# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**AARON LOPEZ-LOPEZ**,

On behalf of himself and all others
Similarly situated,

        Plaintiff,

vs.

**COUNTY OF ALLEGAN**, and
**FRANK BAKER**, in his individual
capacity,

        Defendants.

Case No. 1:17-cv-00786-PLM

Hon. Paul L. Maloney
Magistrate Judge Ray Kent

**PLAINTIFF'S RESPONSE OPPOSING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

---

**AVANTI LAW GROUP, PLLC**
Robert Anthony Alvarez (P66954)
Victoria Smalley (P80179)
Kristin Sage (P81173)
Attorneys for Plaintiff
600 28th St. SW
Wyoming, MI 49509
(616) 257-6807

**SOMMERS SCHWARTZ, P.C.**
Matthew L. Turner (P48706)
Amy L. Marino (P76998)
Attorneys for Plaintiff
One Towne Square, 17th Floor
Southfield, MI 48706
(248) 355-0300
mturner@sommerspc.com
amarino@sommerspc.com

**LAW OFFICE OF MARC ASCH**
Marc Asch (P75499)
Attorney for Plaintiff
137 N. Park Street, Suite 201B
Kalamazoo, MI 49007
(617) 653-8184
Marc.a.asch@gmail.com

**JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C.**
Andrew J. Brege (P71474)
Attorney for Defendants
822 Centennial Way, Suite 270
Lansing, MI 48917
(517) 886-3800
abrege@jrslaw.com

**U.S. DEPARTMENT OF JUSTICE**
Vinita B. Andrapalliyal
Erez Reuveni
Attorneys for Defendants
Vinita.b.andrapalliyal@usdoj.gov
(202) 598-8085

## PLAINTIFF'S RESPONSE OPPOSING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

### ARGUMENT

#### a. This Court Has Subject-Matter Jurisdiction over Plaintiff's Claims

This Court has already determined that it has subject-matter jurisdiction over Plaintiff's claims.  Elsewhere, the Court has explained that Plaintiff's claims are distinct from "an action or proceeding to remove an alien" under 8 U.S.C. § 1252(b)(9) and noted that other federal district courts have exercised jurisdiction over similar challenges to ICE detainers.  Opinion Denying Pl's Mtn for P.I., Dkt. # 41, PageID.524.  As such, the Court should deny Defendants' Motion to Dismiss to the extent it is based on arguments relating to subject-matter jurisdiction.

#### b. Numerous Federal Courts Disagree with Defendants' "Reasonableness" Position.

The chief argument Defendants make is that their detention of Plaintiff pursuant to ICE Detainer was reasonable, and therefore not unconstitutional.  Defendants urge the Court to accept that local law enforcement authorities can exercise the special statutory powers reserved for federal immigration authorities without violating the Fourth Amendment.   The biggest problem with this position is that most federal courts ruling on the issue disagree.

Numerous federal district courts have found that detention by local authorities pursuant to ICE Detainers alone violates the Constitutional rights of the detainee.  These rulings issued in cases with facts nearly identical to Plaintiff's: an individual is initially arrested and detained for allegedly violating state or local law, is released from custody by the judge (typically after posting bond or serving a sentence), but is further detained by local officials based only on a non-binding *request* from Immigrations and Customs Enforcement ("ICE") known as an ICE Detainer.

For example, the Southern District of Indiana preliminarily enjoined enactment of a statute that would have allowed local authorities to do just what Defendants here have done: make warrantless arrests and detentions pursuant to ICE Detainer requests and other federal immigration actions. In *Buquer v. City of Indianapolis*, 797 F. Supp. 2d 905 (S.D. Ind. 2011), plaintiffs sought to enjoin a statute, not yet in effect, that would have permitted local authorities to arrest them without warrants based on removal orders, detainers, or notices of action from federal immigration authorities. In evaluating the merits of the plaintiffs' claims, the court ruled that the challenged legislation "authorizes the warrantless arrest of persons for matters and conduct that are not crimes," and found that "such power contravenes the Fourth Amendment." *Id.*, at 919. This is precisely the unlawful power wielded by Defendants in the case at bar.

In another ICE Detainer case, *Miranda-Olivares v. Clackamas County*, the plaintiff was arrested by local law enforcement officers for violating a restraining order and booked into the county jail. No. 3:12-CV-02317-ST, 2014 WL 1414305, *1 (D. Or. Apr. 11, 2014). The day after her arrest, ICE issued a Detainer asking the county to hold her beyond the time when she ordinarily should have been released. *Id.* Although the judge set bail for her state charges at $500 cash, which her family was willing and able to pay, jail officials informed her family that she would not be released upon payment of the $500 bond the judge had set because of the Detainer. In evaluating plaintiffs' motion for summary judgment on her Fourth Amendment claim, the court ruled,

> the ICE detainer alone did not demonstrate probable cause to hold Miranda-Olivares. It stated only that an investigation "has been initiated" to determine whether she was subject to removal from the United States. *See Arizona*, 132 S. Ct. at 2509 ("Detaining individuals solely to verify their immigration status would raise constitutional concerns."). The ICE detainer's stated purpose of requesting the Jail to hold Miranda-Olivares custody was "to provide adequate time for [ICE] to assume custody" of her. Therefore, it was not reasonable for the Jail to believe it had probable cause to detain Miranda-Olivares based on the box checked on the ICE detainer.

3

*Miranda-Olivares v. Clackamas Cty.*, No. 3:12-CV-02317-ST, 2014 WL 1414305, *11 (D. Or. Apr. 11, 2014) (alteration in original).  The court ruled that the ICE Detainer was not mandatory on the county, but rather discretionary.  *Id.*, at *8.  Furthermore, the plaintiff's detention pursuant to the ICE Detainer was a separate seizure from her initial arrest that had to be supported by probable cause, but was not.  *Id.*, at *11; *Accord Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) ("Because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification.") (citing *Illinois v. Caballes*, 543 U.S. 405, 307-08 (2005) and *Arizona v. U.S.*, 132 S.Ct. 2492, 2509 (2012)). The court granted plaintiff's motion for summary judgment on her Fourth Amendment claim:

> There is no genuine dispute of material fact that the County maintains a custom or practice in violation of the Fourth Amendment to detain individuals over whom the County no longer has legal authority based only on an ICE detainer which provides no probable cause for detention. That custom and practice violated Miranda–Olivares's Fourth Amendment rights by detaining her without probable cause both after she was eligible for pre-trial release upon posting bail and after her release from state charges.

*Miranda-Olivares*, 2014 WL 1414305 at *11.  This ruling, on facts similar to the ones in the case at bar, demonstrates that Plaintiff has stated a claim for relief.

In another case dealing with detention pursuant to ICE Detainers, *Morales v. Chadbourne*, 996 F.Supp.2d 19, 39 (D. R.I. 2014), the court opined that ICE detainers are not mandatory and that the state should not have reasonably concluded they were.  *Id.*, at 39-40.  As such, the plaintiff's detention pursuant to the ICE Detainer was unreasonable under the Fourth Amendment. *See id.*, at 39.  The court further ruled that, once the local authority "erroneously decided as a matter of policy that ICE detainers should be treated as mandatory grounds for imprisonment, it

4

was incumbent on him to put due process protections in palace to avoid erroneous deprivations of liberty." *Id.*, at 40-41.  Because the local authority continued the plaintiff's detention without giving her an opportunity to challenge same, she had stated a claim for violation of her due process rights that would survive a motion to dismiss.  *Id.*

A similar case from Northern District of Illinois was allowed to survive a motion to dismiss on Fourth Amendment and due process claims.  In *Villars v. Kubiatowski*, 45 F. Supp. 3d 791 (N.D. Ill. 2014), an immigrant challenged his detention by county officials pursuant to an ICE Detainer alone.  The court refused to grant the defendants' motion to dismiss.  Noting that every federal court of appeals that has considered the nature of ICE detainers characterizes them as "requests" that impose no mandatory obligation on the part of the detainer's recipient, and that the plain language of the detainer did not provide probable cause to believe that he was involved in criminal activity, the Court held that Defendants were not obligated to detain Villars pursuant to the ICE detainer.  *Id.* at 802. Accordingly, the Court denied the Defendants' motion to dismiss Villars's allegations that they violated his Fourth Amendment and procedural and substantive due process rights. *Id.*

In *Santoyo v. U.S.*, No. 5:16-CV_855-OLG, 2017 WL 2896021 (W.D. Tex. June 5, 2017), on similar facts, the court determined no evidence that the County's detention of plaintiff pursuant to an ICE Detainer was supported by probable cause that the plaintiff had committed any crime, state or federal. *Id.* at *7.  The Court therefore granted the plaintiff partial summary judgment on his Fourth Amendment claim.  *Id.*

In yet another ICE Detainer case, *Mercado v. Dallas County*, *Texas*, 229 F.Supp.3d 501 (N.D. Tex. 2017), the plaintiffs were all detained up to 48 hours in county jail pursuant to ICE Detainers after the time they should have been released on state charges.  *Id.*, at 504-05.  Under

5

Fourth Amendment jurisprudence, absent probable cause, Dallas County was not permitted to detain the plaintiffs after they were otherwise eligible for release. *Id.* at 511. The court concluded that the plaintiffs had sufficiently alleged—and Dallas County did not dispute—that Dallas County detained them after they were otherwise eligible for release, without probable cause to believe they had committed or were committing a criminal offense. *Id.* at 512-13. These allegations plausibly alleged a violation of the Fourth Amendment. *Id.* at 513.

Federal Circuit Courts have ruled on similar cases. In *Galarza v. Szalczyk*, the Third Circuit overturned the dismissal of a plaintiff's claim that Lehigh County had violated his Fourth Amendment and procedural due process rights by detaining him pursuant to ICE Detainer alone. 745 F. 3d 634 (3rd Cir. 2014). The district court had erroneously reasoned that the county's policy of honoring ICE Detainers was consistent with federal law because the detainers were mandatory on the county. *Id.*, at 638. In reversing the ruling below, the Third Circuit agreed with the Sixth, Second, Fourth, First, and Fifth Circuit Courts[1] that case law, public policy statements from ICE

---

[1] The Third Circuit summarized the case law supporting this position as follows:

> All Courts of Appeals to have commented on the character of ICE detainers refer to them as "requests" or as part of an "informal procedure." *See, e.g., Ortega v. U.S. Immigration & Customs Enforcement*, 737 F.3d 435, 438 (6th Cir. Dec. 10, 2013) (noting that federal immigration officials issue detainers to local LEAs "asking the institution to keep custody of the prisoner for the [federal immigration] agency or to let the agency know when the prisoner is about to be released"); *Liranzo v. United States*, 690 F.3d 78, 82 (2d Cir.2012) (noting that "ICE issued an immigration detainer to [jail] officials requesting that they release Liranzo only into ICE's custody" so that he could be removed from the United States); *United States v. Uribe–Rios*, 558 F.3d 347, 350 n. 1 (4th Cir.2009) (defining detainers as a "request that another law enforcement agency temporarily detain an alien" to permit immigration officials to assume custody (citing 8 C.F.R. § 287.7)); *United States v. Female Juvenile, A.F.S.*, 377 F.3d 27, 35 (1st Cir.2004) (noting that a "detainer ... serves as a request that another law enforcement agency notify the INS before releasing an alien from detention" (citing 8 C.F.R. § 287.7(a))); *Giddings v. Chandler*, 979 F.2d 1104, 1105 n. 3 (5th Cir.1992) (describing the procedure under § 287.7 as "an informal [one] in which the INS informs prison officials that a person

and INS, and the language of the detainers themselves mandated one conclusion: "detainers are not mandatory." *Id.*, at 642; *accord Mercado v. Dallas County*, *TX*, 229 F. Supp. 3d 501, 514 (N.D. Tex. 2017).

In addition, the Fourth Circuit has found that, "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law." *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 465 (4th Cir. 2013).

In addition to the myriad courts that have found detention by county authorities pursuant to ICE Detainers alone to be unconstitutional, at least two states' attorneys general have analyzed the issue and published policy statements opining that ICE Detainers are mere requests and not mandatory:

> On December 4, 2012, the California Attorney General published his opinion that ICE detainers were "merely requests enforceable *at the discretion of the agency* holding the individual arrestee" based on the non-mandatory language used in the Form I–247 and the Tenth Amendment. Reply (docket # 30), Ex. 3, p. 2. On October 31, 2013, again relying on the Tenth Amendment, the Maryland Attorney General stated "it is my view, that the mandatory meaning of the term 'shall' should be limited to the length of the stay" and "that the best reading of the regulation, supported by the position of ICE, allows state and local jurisdictions to exercise discretion when determining how to respond to individual detainers." *Id.*, Ex. 2, pp. 2–3.

*Miranda-Olivares v. Clackamas Cty.*, No. 3:12-CV-02317-ST, 2014 WL 1414305, at *8 (D. Or. Apr. 11, 2014) (emphasis in original). The discretionary nature of the ICE Detainer requests means that local authorities who decide to honor them may incur liability for Constitutional violations associated with that decision.

---

is subject to deportation and requests that officials give the INS notice of the person's death, impending release, or transfer to another institution").

*Galarza*, 745 F.3d at 640–41.

Defendants simply are not entitled to the blanket presumption they seek from the Court—that whatever actions they take in the name of immigration enforcement should be analyzed as if performed by federal immigration authorities. *See* Defs' Br., PageID.393-396. Even the "Warrant for Arrest of Alien" on which Defendants rely acknowledges this on its face; it is addressed to "Any *immigration officer* authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." Dkt. # 36-6, Defs' Ex. 5, PageID.420 (emphasis added). Nor are Defendants entitled, at this stage of the proceedings, to a presumption that the challenged actions

### c. Defendants Are Not Entitled to Have Factual Issues Resolved in Their Favor on a Motion to Dismiss.

For Defendants to succeed on their motion, the Court would have to credit Defendants' version of unproven and disputed facts in a manner inappropriate on a motion to dismiss. Plaintiff's receipt for his bond payment reflects that it was paid at 9:23:22 PM on August 14, 2017. PageID.306. The Bond Deposit Receipt fax that Defendants cite as their Exhibit 2 shows that Plaintiff's bond was paid on 8/14/17 at 9:20:38 PM. PageID.412. Defendants urge the Court to accept that the "10:24 PM" stamp at the top of the same page shows that they did not receive notice that Plaintiff's bond had been paid until 10:24 PM--*after* receiving the ICE Detainer and administrative warrant that they received from ICE officer Lembke at 9:31:48 PM via email. PageID.414.

However, Plaintiffs are entitled to take discovery on this important document. To begin with, it appears to have been automatically generated, triggered by payment of Plaintiff's bond. The fax header line that says "10:24 PM" also says, "From: Genesis Technology." PageID.412. The time stamp was placed by the sending fax machine, belonging to Genesis Technology. In order to establish what time (i.e., local time in Allegan County) the document was sent, Plaintiffs

8

would need discovery on what time zone it was sent from, whether the internal clock on the sending fax machine was accurate and/or had been adjusted for daylight savings, and other foundational questions that would establish whether Jail staff had notice that Plaintiff's bond had been satisfied and he was free to go *before* the Lembke email arrived.

Why would it matter?  Defendants argue repeatedly that 8 U.S.C. § 1357(g)(10)(B) defeats any claim by Plaintiff that they acted unconstitutionally because they were acting pursuant to ICE request and federal statutory authority when they detained Plaintiff.  Defs' Br., PageID.393-396.  However, if the fax receipt was indeed automatically generated when Plaintiffs' bond was paid at the electronic kiosk at approximately 9:23 PM and received by Jail staff around the same time, rather than at 10:24 PM, as the Genesis Technology fax machine stamped it, the argument that Defendants were merely "cooperat[ing] at the request and under the guidance of the federal government" (PageID.392) when they decided to detain him fails.  A detention must be justified at its outset, and continuing Plaintiffs' detention beyond the time when he was free to go for the purpose of investigating his immigration status is just what Defendants acknowledge *Arizona* prohibits: "local officials in the impermissible position of arresting and detaining persons based on their immigration status without federal direction and supervision."  PageID.396-397.

## **CONCLUSION**

For the reasons stated above, Plaintiff must be allowed to pursue his claims, and Defendants' motion should be denied.

> Respectfully submitted,
>
> /s/ Amy L. Marino
> Matthew L. Turner (P48706)

9

        Amy L. Marino (P76998)
        Sommers Schwartz, P.C.

        Robert Anthony Alvarez (P66954)
        Avanti Law Group, PLLC

        Attorneys for Plaintiff

Dated: January 8, 2018

## Certificate of Service

    I hereby certify that on January 8, 2018, I electronically filed the foregoing with the Clerk of the Court using the EFC system, which will send notification of such filing to all counsel of record.

        /s/ Amy L. Marino
        Sommers Schwartz, P.C.