UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AARON LOPEZ-LOPEZ, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED<br>Plaintiff,<br><br>-v-<br><br>COUNTY OF ALLEGAN,<br>& FRANK BAKER,<br>IN HIS INDIVIDUAL CAPACITY,<br>Defendants. | No. 1:17-cv-786<br><br>HONORABLE PAUL L. MALONEY |

# OPINION

Plaintiff Aaron Lopez-Lopez has raised claims against Defendants Allegan County and Sheriff Frank Baker for alleged violations of the Fourth Amendment, Fifth Amendment, and state tort law. The matter is before the Court on Defendants' motion to dismiss. Because Aaron has not pleaded a plausible claim for which relief can be granted, the Court will grant Defendants' motion to dismiss and enter judgment.

## I.

### A. Facts

Aaron Lopez-Lopez was arrested on August 14, 2017 in Allegan County on an outstanding warrant for a probation violation. He was booked into the Allegan County Jail shortly thereafter—around 8:00 P.M.—and his family posted a $1000 cash bond around 9:30. The bond processing company faxed a time-stamped confirmation to the jail, which recorded the time as 10:24.

Nearly simultaneous to Aaron posting bond, and before receiving confirmation, Allegan County received an I-247 detainer and I-200 administrative warrant from Immigration and Customs Enforcement (ICE). The I-247 detainer requested that Allegan County hold Aaron until an ICE agent could take custody of him but indicated that if ICE was unable to pick him up within 48 hours, Allegan County should release him. It also set forth ICE's probable cause for believing Aaron was a deportable alien. The next morning, an ICE agent personally served Aaron with the I-200 administrative warrant, and ICE took custody of him around 3:00 P.M. that afternoon.

Based on these facts, Aaron filed suit alleging that Allegan County and Sheriff Frank Baker violated his Fourth Amendment right to be free from unreasonable searches and seizures, his Fifth Amendment right to due process, and state tort law for false imprisonment. Defendants filed a motion to dismiss in lieu of an answer.

## B. The Federal Immigration System

An understanding of the federal immigration system is necessary to resolve the motion. The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012); *see also Trump v. Hawaii*, 585 U.S. —, 138 S. Ct. 2392, 2408 (2018) (explaining that the President has "broad discretion to suspend the entry of aliens into the United States"). Congress, by virtue of the Immigration and Nationality Act (INA), has authorized the Department of Homeland Security, through Immigration and Customs Enforcement, to carry out federal immigration law. This includes authority to interview, arrest, and detain removable aliens. 8 U.S.C. §§ 1226(a)–(c) (authorizing the Attorney General to issue

warrants, arrest aliens, and take them into custody while a decision to remove them is pending).[1]

The INA also authorizes the Department of Homeland Security to enter into formal cooperative agreements with state and local law enforcement, essentially deputizing them to carry out federal immigration law. *See* 8 U.S.C. § 1357(g). Under these agreements, state and local authorities are subject to the supervision of the Secretary and perform specific immigration enforcement functions like investigating, apprehending, and detaining aliens. § 1357(g)(1)–(9). However, where no formal cooperative agreement exists, local authorities may still "communicate with [ICE] regarding the immigration status of any individual . . . or otherwise cooperate with [ICE] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." § 1357(g)(10)(A)–(B).

One additional requirement exists when state and local authorities seek to aid federal agents without a formal agreement in place: Their cooperation must be pursuant to a "request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410. When requested, state and local law enforcement may "participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities." *Id.* But state and local officers cannot make unilateral decisions relating to immigration enforcement. *Id.*

---

[1] References in the INA to the Attorney General are generally read to refer to the Secretary of Homeland Security. *See Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 621 n.4 (2010).

One method in which the federal government requests the cooperation of state authorities is by issuing I-247 detainers. An immigration detainer notifies a state or locality that ICE intends to take custody of a removable alien when the alien is released from that jurisdiction's custody. ICE issues the detainer to request that the state or locality to cooperate by notifying ICE of the alien's release date and by holding the alien for up to 48 hours— which is based on ICE's determination that the it has probable cause that the alien is removable. *See* 8 C.F.R. § 287.7(a), (d).[2]

In April of 2017, ICE changed its policy so that ICE officers provided signed administrative warrants along with ICE detainers when they sought cooperation from local law enforcement to hold an individual for detention. Prior to this change in policy, officers issued only I-247 detainers to local law enforcement when it sought local cooperation to hold a suspected alien.

## II.

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule

---

[2] The overwhelming consensus of the federal courts is that immigration detainers are requests and are not binding on state and local authorities. If detainers *were* mandatory, they would likely be struck down on anti-commandeering, Tenth Amendment grounds. *See Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014).

4

12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If the plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; rather, "it must assert sufficient facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests." *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

Generally, the Court can only look to the Complaint on a motion under Rule 12(b)(6). However, limited "other sources," such as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," may be considered. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007*); see Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) ("In evaluating a motion to dismiss, we 'may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.'").

## III.

Defendants argue that Plaintiff has failed to state a claim for many reasons. However, their first argument—that the Court lacks subject matter jurisdiction—is moot because the Court has since concluded that it has jurisdiction over the claims. (*See* Opinion and Order Denying Motion for a Preliminary Injunction, ECF No. 41 at PageID.521–24.)

Defendants' other arguments largely go to the merits of the claims, so the Court will proceed to analyze whether Aaron has pleaded a plausible claim under 42 U.S.C. § 1983. As a general matter, "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citations omitted).

6

## A. Allegan County's Cooperation with ICE Did Not Violate the Fourth Amendment

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. The hallmark of a reasonable search or seizures is the existence of probable cause and the issuance of a warrant by a detached and neutral magistrate. *Illinois v. Gates*, 462 U.S. 213, 2136 (1983).

Generally, searches and seizures arise in criminal investigations, but they also arise in other contexts. In fact, individuals may be arrested for *any* violation of law—civil or criminal. *See Arkansas v. Sullivan*, 532 U.S. 769 (2001) (per curiam) (noting that police officer had authority to arrest defendant for fine-only traffic offense).

Specifically in the immigration context, federal law enforcement officers have a long history of using administrative warrants and arrests for purposes of deportation, dating back to 1798. *See Abel v. United States*, 362 U.S. 217, 233 (1960) (discussing history of the use of administrative warrants in immigration enforcement); *see also Lopez v. INS*, 758 F.2d 1390, 1393 (10th Cir. 1985) (discussing the differing levels of protections afforded to citizens and aliens, including the use of administrative warrants). Administrative warrants differ significantly from warrants in criminal cases because they do not require a detached and neutral magistrate. Instead, executive officers may issue an administrative warrant upon probable cause to believe a civil infraction has occurred. *Abel*, 362 U.S. at 233. That is precisely what happens when ICE agents issue administrative warrants charging that there is probable cause to believe that an individual is not legally within the United States. *Id.*; 8 U.S.C. § 1226(a).

ICE agents can also request the aid of state and local law enforcement. 8 U.S.C. § 1357(g); *Arizona*, 567 U.S. at 410. When ICE agents issue valid detainers and administrative warrants to local law enforcement, they are requesting that the local law enforcement "provide operational support by executing a warrant." § 1357(g)(10). Under ICE's current policy, the detainer satisfies the request element because cooperation by local law enforcement is optional. And the administrative warrant establishes that the federal government has authority to detain the individual. The United States Supreme Court has endorsed such cooperation. *Arizona*, 567 U.S. at 410.

Plaintiff asserts that "[n]umerous federal district courts have found that detention by local authorities pursuant to ICE detainers alone violates the Constitutional rights of the detainee." (ECF No. 42 at PageID.528.)

The problem is that Lopez-Lopez was not detained solely on the basis of an ICE detainer. Additionally, the detainers at issue in the cases he cites are substantively different from the detainer ICE issued in this case. Further, some of the cases are wholly irrelevant to the discussion because they determine only that cooperation with ICE detainers is discretionary rather than mandatory—a well-settled principle that does not bear on the outcome.

First, in *Buquer v. City of Indianapolis*, the issue was whether plaintiffs had standing to enjoin a state statute, not yet in effect, which would have given local authorities extremely broad powers to arrest suspected aliens without warrants based on removal orders, detainers, or notices of action. 797 F. Supp. 2d 905 (S.D. Ind. 2011). The court found that the plaintiffs had standing to seek injunctive relief because their claim centered on an actual, imminent

8

threat that they would be arrested unlawfully, should the statute take effect. *Id.* at 916. The court then concluded that a preliminary injunction was warranted because the statute gave state and local law enforcement broader power than that of federal immigration officers. *Id.* at 917–20. The court stated:

> Federal immigration law consists of a myriad of provisions together creating a balance between competing regulatory and policy objectives. In order to maintain that balance throughout the country, federal law vests discretion at the federal level regarding whether and which person without full, lawful alien status should be arrested. However, [this statute] alters that balance by authorizing the arrest for immigration matter of individuals within the State of Indiana only whom, in many cases, the federal government does not intent to be detained."

*Id.* at 921. Accordingly, the court found that the broad discretion vested in state and local law enforcement caused the statute to be preempted by the INA. *Id.*

*Buquer* does not advance the ball because this case does not involve any state law authorizing local authorities to use their discretion to conduct warrantless arrests of suspected aliens. Allegan County can choose to cooperate, or it can refuse. If it chooses to cooperate, it has no discretion at all; it merely follows the direction of ICE agents given via detainer and administrative warrant. *Arizona*, 567 U.S. at 410.

The next cases, *Miranda-Olivares v. Clackamas County* and *Morales v. Chadbourne* merit only cursory discussion. In each case, the issue was whether local law enforcement violated the Fourth Amendment by holding a detainee after he posted bond pursuant to a detainer from ICE indicating that "it had initiated an investigation" into the suspected alien's status. *See Miranda-Olivares*, 2014 WL 1414305 at *1 (D. Or. 2014); *Morales*, 996 F. Supp. 2d 19, 28–29 (D.R.I. 2014). In each case, ICE did not provide an arrest warrant. Each court

9

concluded that such a seizure violated the Fourth Amendment because the local agency lacked probable cause for the arrest and seizure. Aaron's case is easily distinguishable because the detainer set forth probable cause for the federal agent's belief that Aaron was a removable alien, and it was accompanied by a valid administrative warrant.

Aaron's cited cases arising out of district courts in Texas are unpersuasive for a different reason. In *Mercado v. Dallas County*, 229 F. Supp. 3d 501 (N.D. Tex. 2017), and *Santoyo v. United States*, 2017 WL 2896021 (W.D. Tex. June 5, 2017), the respective courts ruled that local law enforcement could not detain individuals on the basis of an ICE detainer without probable cause of a *criminal* offense. *Mercado*, 229 F. Supp. 3d at 513; *Santoyo,* at *6-7. The Fifth Circuit specifically rejected this conclusion in *City of El Cenizo v. Texas*, ruling that the district courts erred and giving several examples in which statutes have permitted seizure absent probable cause that a crime had been committed. 890 F.3d 164, 188 (5th Cir. 2018); *see id.* ("The district court's contention is also patently at odds with immigration law and procedure; civil removal proceedings necessarily contemplate detention absent proof of criminality."). Thus, the cited district court opinions lack persuasive value.[3]

Finally, Plaintiff cites *Santos v. Frederick County Board of Commissioners* for the proposition that, "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law." 725 F.3d 451, 465

---

[3] Another of Aaron's cases, *Villars v. Kubiatowski,* is similarly unhelpful. 45 F. Supp. 3d 791 (N.D. Ill. 2014) (noting that local law enforcement were not *obligated* to hold the plaintiff on ICE detainer and holding that plaintiff had stated a claim where detainer did not provide probable cause for any criminal activity).

10

(4th Cir. 2013). This is not a controversial assertion; in fact, it is precisely the takeaway of *Arizona*. Thus, applying *Arizona*, the Fourth Circuit held that local law enforcement violated the Fourth Amendment by seizing the plaintiff before communicating with ICE to confirm that a warrant for his arrest had issued. *Id.* at 466. *Santos* provides no support because Allegan County was acting at the express direction of federal immigration officers when they detained Aaron, thus avoiding the type of unilateral detention that violates the Fourth Amendment.

The shift in ICE policy is best illustrated by a case uncited by the parties. In yet another challenge to local cooperation with ICE, a plaintiff imprisoned in Yakima, Washington secured a temporary restraining order after she alleged that she was not given an opportunity to pay bail on state charges because of an immigration hold. *Ochoa v. Campbell*, 266 F. Supp. 3d 1237 (E.D. Wash. July 31, 2017). The key issue in the case was whether the local authorities were cooperating with ICE by detaining the plaintiff. *Id.* at 1255. However, ICE presented only an administrative warrant to the local authorities, without a detainer. *Id.* Therefore, the district court held that the plaintiff had shown she was likely to succeed on the merits of her Fourth Amendment claim because the county was not acting upon a "request" from federal agents when it seized her—because there was no I-247 detainer. *Id.* at 1256-57. Accordingly, § 1357(g)(10) did not authorize them to cooperate with ICE because they were not being directed by federal agents; they were instead exercising the type of unilateral discretion that the Supreme Court ruled unconstitutional in *Arizona*. *Id.*

In sum, when states or localities seize suspected aliens based solely an ICE Detainer or solely on an administrative warrant, they may violate the Fourth Amendment. This result reconciles perfectly with the Supreme Court's holding in *Arizona* because in either situation, the localities are making unilateral decisions about the enforcement of immigration policy. Either they lack probable cause (situations without an administrative warrant) or they lack a request to act (situations without a detainer). The Supreme Court was clear that when state and local law enforcement informally attempt to cooperate with federal immigration agents, they must act on a specific request from ICE agents, and they are limited to actions that do not involve their use of discretion. *Arizona,* 567 U.S. at 410.

Accordingly, Plaintiff has not presented a plausible Fourth Amendment claim against Allegan County as a matter of law. ICE issued a facially valid administrative warrant for his arrest, based on a determination that there was probable cause to believe he was removable. Then, ICE requested that the localities detain Aaron through the use of an I-247 detainer—which also recited the basis for probable cause. Allegan County cooperated by complying with the federal government's request (as allowed pursuant to § 1357(g)(10)) "by providing operational support" by holding Aaron until ICE could take custody of him the following day. Based on this record, with all inferences to Aaron, Allegan County did not run afoul of the Fourth Amendment prohibition against unreasonable seizures.

Lopez-Lopez makes a last-ditch effort to argue that the motion should be denied because it would require the Court to decide a factual dispute in the Defendants' favor. He states that his receipt from his bond reflects that payment occurred at 9:23:22 P.M. on August 14, 2017. The bond deposit receipt produced by the Defendants showed a time of 9:20:38

P.M. The company that handles bond for Allegan County sent a fax confirming that the payment had cleared. This document contains a timestamp of 10:24 P.M.

The times are important because Allegan County received the I-247 detainer and I-200 administrative warrant from ICE Officer Lembke at 9:31:48 P.M. Aaron claims that he is entitled to discovery to establish what time (in Allegan County) the fax was sent by the bond processing company and received in the jail. He speculates that the fax could have been sent from a different time zone or a machine that had not been adjusted for daylight savings time. If that were the case, and the fax was really received at 9:24, then the theory goes that Aaron was subject to a seizure for 8 minutes after he had posted bond and was entitled to release.

The Court is not persuaded by this argument for two reasons. First, Aaron has not shown that his suppositions relating to the bond confirmation time-stamp are plausible. To the contrary, he has given no reason to suspect either scenario is true. This is insufficient in the face of a Rule 12 motion. Second, and more importantly, the matter is entirely irrelevant to whether the Defendants violated his Fourth Amendment rights. Law enforcement agencies do not violate the Fourth Amendment by failing to release inmates the instant that they post bail. As Defendants note, it takes time to complete the process of booking an individual out of the jail; there is paperwork to complete, and the inmate must verify and collect his personal belongings. It certainly takes longer than eight minutes.

Jails are only obligated to process and release individuals who post bond within a reasonable time. *See, e.g., Portis v. City of Chicago*, 613 F.3d 702, 704 (7th Cir. 2010); *Chortek v. City of Milwaukee*, 356 F.3d 740, 747 (7th Cir. 2004) (four hour delay in

13

processing was not unreasonable, and thus not actionable as a Fourth Amendment claim). Even taking the sheer conjecture relating to the time stamps to be true, so that Defendants held Aaron for eight minutes after he made bail, he has failed to state a valid Fourth Amendment claim.

### B. Aaron Has Abandoned His Other Claims

In his Second Amended Complaint, Aaron asserted claims for violation of his Fifth Amendment Due Process rights and state-law claims for false imprisonment and/or false arrest. (ECF No. 31 at PageID.301–02.). Defendants raised several arguments for their dismissal. Aaron filed a ten-page response defending only his Fourth Amendment claim. (ECF No. 42.) "Claims left to stand undefended against a motion to dismiss are deemed abandoned." *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to a motion to dismiss a claim, "the Court assumes he concedes this point and abandons the claim"); *see also Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) ("The district court correctly noted, however, that Doe abandoned those claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint."). Thus, Counts II and III are deemed abandoned and subject to dismissal. The Court also concludes that Plaintiff has failed to state a claim against Sheriff Frank Baker individually and that even if he had, qualified immunity would apply.

### IV.

For the reasons discussed, the Court will grant Defendants' motion to dismiss and enter judgment in this matter.

## ORDER

For the reasons stated in the accompanying Opinion, the Court **GRANTS** Defendants' motion to dismiss. (ECF No. 35.) Judgment to enter separately.

**IT IS SO ORDERED.**

Date: July 13, 2018 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge